TETLOW (UNITED STATES v.). See Case No. 16,456.

---

## Case No. 13,846.

### In re TEUSCHER.

[23 Int. Rev. Rec. 202.]

Circuit Court, D. Missouri. 1877.

FINES AND PENALTIES—METHODS OF COLLECTION—EXECUTION AND IMPRISONMENT.

[Since the passage of the act of June 1, 1872, authorizing the collection of fines and penalties in criminal cases by execution against defendant's property, such fines and penalties may be enforced, either by such an execution or by capias; but if the court in its sentence directs collection by execution, a subsequent imprisonment under a capias is illegal.]

[This was an application by Louis Teuscher for a writ of habeas corpus.]

Louis Teuscher, it appears, was one of the defendants in the late whiskey prosecutions. He was under several indictments in the district court, one being for felony, which was nolle prosequied, and the two others for misdemeanors, which were consolidated. Having pleaded guilty, he was sentenced, on June 2, 1876, under section 5440 of the General Statutes of the United States, better known as the "conspiracy section," which provides that "if two or more persons conspire for the purpose of committing any offence against the United States * * * all of the parties to such conspiracy shall be liable to a penalty of not less than $1,000 and not more than $10,000, and to be imprisoned for not more than two years." The sentence, as it appears on the records of the court was "that the said Louis Teuscher make his fine to the United States by the payment of $1,000, and also the costs of the prosecution of said cause to be taxed, and that executions for said fine and costs be issued against the said defendant herein; and further, that the said defendant be confined and imprisoned by the marshal for and during the term of one day from this date."

That part of the sentence relating to imprisonment seems to have been satisfied, but the fine of $1,000 was never paid. Promises of payment were made, but never attended to, and the matter was still hanging fire when Mr. Bliss, the United States district attorney, went to Washington. While there he received instructions to issue capias pro fine, and on his return such capias was duly served. Teuscher sued out a writ of habeas corpus, and the hearing on the writ was set for yesterday before Judge TREAT. Judge Chester H. Krum appeared for Teuscher.

Teuscher's answer to the return of the marshal sets out his sentence by the court on June 2, 1876, and that the imprisonment has been served out, and avers that the petitioner, Teuscher, can not be now lawfully held in the marshal's custody under that sentence. To which avower the district attorney duly filed a demurrer on behalf of the marshal, that the facts stated therein do not constitute a barrier to the present execution by capias, and praying that the petitioner be remanded to the marshal's custody.

The question at issue was essentially this: Was the $1,000 fine imposed on Teuscher a fine in the proper sense of that word, or a penalty? The sentence speaks of a "fine" and "costs," and "execution" therefor. There is no specific mention of imprisonment until the fine is paid. The section under which sentence was imposed speaks of a "penalty of not less than $1,000, and by imprisonment for not more than two years."

Judge Krum, for Teuscher, argued that the $1,000 was a penalty. Teuscher had been imprisoned his one day under his sentence; the penalty was to be collected by execution against his estate. The petitioner could not be twice imprisoned for the same offence. Under no circumstances could the district court sentence Teuscher to a second punishment for the same crime. His sentence was to pay a fine and costs and suffer one day's imprisonment. It was not to pay a fine and costs, and stand committed till the same were paid or the defendant discharged under the insolvent convicts' clause. Judge Krum

referred to Greenville's Case, 1 Reyn. 213, and to the Lange Case in 18 Wall. [85 U. S. 163]. If the court had meant to imprison Teuscher till the fine was paid it would have said so in the sentence. Furthermore, the petitioner was one of a class of men whose heavy punishment had not been intended by the government, on account of meritorious services rendered in the prosecution of other cases.

Mr. Bliss said the question turned entirely on the meaning of the word "fine" and the meaning of the word "execution." The word "fine" was defined by Lord Bacon, quoted in Bouvier's Legal Dictionary, to be a pecuniary punishment imposed by a lawful tribunal upon a person convicted of crime or misdemeanor." "Execution" is defined to be "the act of carrying into effect the judgment or decree of a court. Execution against the person is effected by the writ of capias ad satisfaciendum, under which the sheriff arrests the defendant and imprisons him till he satisfies the judgment or is discharged by proceeding of law."

Mr. Bliss quoted from Chit. Cr. Law, p. 111, and Bish. Cr. Proc., and cited Kane v. People, 8 Wend. 215; Ex parte Watkins, 7 Pet. [32 U. S.] 574; and State v. Dodge, 24 N. J. Law [671], to show that wherever a fine was imposed, it was with the understanding that the defendant stand committed until it be paid, or until his release under the insolvent convicts' section. That section provides that a convict sentenced to fine, who shall make oath of insolvency, shall be released from payment of such fine at the expiration of thirty days' imprisonment in lieu thereof.

In conclusion, Mr. Bliss remarked that the offence of Teuscher was too grave a one to be passed over with merely a nominal imprisonment, and that, according to the practice and the common law rule, the government was entitled in this and all similar cases to a capias pro fine, as it had always had since he had been connected with the court.

In answer to a question by the court, it was stated that the cases of Bensberg, Bernecke and Wadsworth were similar so far as the form of sentence was concerned to the Teuscher case. In the Kellerman case a fine of $1,000 and costs was imposed, the defendant "to stand committed till such fine and costs be paid." The clerk who entered the sentences was unable to explain the difference.

TREAT, District Judge, said there was a question of how far the act of June 1, 1872 [17 Stat. 196], affected the act of 1792. Under the act of 1792 [1 Stat. 275], a capias ad satisfaciendum might go in the first instance, while the later act allowed the collection of the fine or penalty by execution against defendant's property.

THE COURT then took the papers and put the matter over until to-day.

TREAT, District Judge. On examination of the record entry of judgment, by which the court has to be controlled, this proposition necessarily arises, viz.: Whether, when the court enters as a part of its judgment the process for the enforcement of same, that is to be considered as the sole process? Prior to the act of 1872, in all criminal proceedings, fines and penalties that became part of the sentence were enforced, either by the judgment of the court that the party should stand imprisoned until the fine or penalty was paid, or omitting that clause, leaving the district attorney to issue his capias pro fine. In 1872 congress passed a very important act, regulating the practice and proceedings of the United States courts. It took occasion in that act, by what is now known as section 1041 of the Revised Statutes, for the first time to adopt an alternative mode of making good to the government the amount of penalty or fine. By the terms of that provision the fine or penalty might be collected by an execution for the first time in the history of the government. It, of course, was not designed by this act that that should be the exclusive mode, but either one mode or the other might be adopted, to wit: either what is generally known now by the term "execution" or a capias.

Now, "execution," as used in this act, is what is known by the profession generally, the country over, as fi. fa. If nothing had been said in this judgment concerning the mode of enforcing it, then the district attorney, at his election, might have adopted one or the other process; but the court, for reasons satisfactory to itself at the time, imposed what was the minimum punishment under the statute in these particular cases. (I am speaking of cases other than Kellerman's.) It did so at the representation of the prosecuting officers of the government, but for which representations very different judgments might possibly have been rendered. Now, in making that sentence and in passing that judgment, the court seems to have acted distinctly on the idea of the minimum punishment. What is the minimum punishment? It was one day's imprisonment and $1,000 penalty. What is mentioned in the judgment as "fine" would more properly have been "penalty." Then following that judgment, what was to occur? If it was left to be collected by capias, thirty days at least of additional imprisonment would follow under the poor convict act; but if the court, in its judgment, said that the penalty was to be collected by execution, then one day was the limit of the punishment by imprisonment, leaving execution as the sole process allowable in the case. I think no other conclusion could be reached from the act of 1872. It reads:

"In all criminal or penal causes, in which judgment or sentence has been or shall be rendered imposing the payment of a fine or penalty, whether alone or with any other kind of punishment, the said judgment, so far as the fine or penalty is concerned, may

be enforced by execution against the property of the defendant in like manner as judgments in civil cases are enforced; provided" (and the proviso is very important in the interpretation of this section) "that where a judgment direct that the defendant shall be imprisoned until the fine or penalty imposed is paid, the issue of the execution on the judgment shall not operate to discharge the defendant from imprisonment until the amount of the judgment is collected or otherwise paid."

It is very clear from the terms of that act that congress contemplated that the harsher modes of collecting these penalties and fines should not be in all cases adopted, but left it, as most criminal acts leave the punishment, to be determined by the court most familiar with all the facts and circumstances pertaining thereto. The court might have ordered these parties to stand committed until their fines were paid. Had it done so they would have been so committed, and then at the expiration of thirty days, under the provisions of section 1042 of the Revised Statutes, they could have been discharged on showing their pauperism. Hence these judgments, as they stand in these cases, are judgments rendered by the court at the time named, and whether erroneous or not they must stand as final judgments.

I notice that the form of writ which went into the hands of the marshal is not precisely what it should have been, but that is a matter of minor moment to this since the court has reached this definite conclusion. The inadvertence perhaps lay in the draftsman not having the record of judgment before him at the time. I have before me the writ in Bernecke's case. After stating "whereas, etc.," and citing the penalty imposed, it states, "and capias pro fine was ordered to be issued for said fine and costs." That was not the judgment of the court. If the court had not, acting in accordance with the provisions of this act of congress, thus determined the manner in which this penalty should have been collected, then the district attorney could have issued a capias pro fine.

It so happened that these cases were determined upon the last day I sat upon the bench, so that the then condition of my health and the immense amount of business thrust upon me at the time, did not enable me to carefully supervise these judgments as entered. I left immediately afterwards, and my attention has never been called to the form of them until this case arose. Had my attention been called as these things arose, I should probably have drafted the judgment myself. They must, however, stand as absolute verities. Therefore, all the prisoners of this class will be discharged.

Now, as to Kellerman's case. That stands on quite a different footing. In the petition it is stated that "this capias issues under a judgment rendered May 6," an inadvertence on the part of the draftsman, for the judgment was modified June 1, and I looked to the judgment of June 1, and find it reads thus: "And it is thereupon further considered by the court as the judgment and sentence of this court, upon the plea of guilty, entered by said defendant in this case, that the said defendant, Louis Kellerman, make his fine to the United States of America by the payment of the sum of $1,000, and also the costs of the prosecution of this cause to be taxed, and that he stand committed until said fine and costs be paid, and that the said defendant, Louis Kellerman, be confined and imprisoned in the county jail of St. Louis county, at the city of St. Louis, state of Missouri, for and during the term of one month from this date, and the marshal of the said United States is hereby directed to deliver said prisoner, Louis Kellerman, for keeping, under this judgment and sentence, to the keeper of the said St. Louis county jail." A difficulty might have arisen if the commitment had not specified any place of imprisonment, but an examination of the judgment shows that it did specify as the place of imprisonment the county jail of St. Louis county.

Now, whether that commitment ever was executed or a mittimus was ever issued by the clerk of the court to the marshal, is unknown to the court. There is, however, resting on my memory that the district attorney at that time, for purposes satisfactory to himself, in connection with this case, withheld the mittimus. But that does not change the aspect of the case, so far as Mr. Kellerman is concerned. The writ is rightfully issued, and he is rightfully in custody, as the judgment of the court was that he be committed until he pay the penalty. He will have to pay the penalty or go through the poor-convict process. Hence the writ of habeas corpus in this case must be dismissed, and he is left in the custody of the marshal.